# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### February 2, 2016 Session


## STATE OF TENNESSEE v. PRINCE DUMAS


### Appeal from the Criminal Court for Shelby County
### No. 1304342      W. Mark Ward, Judge

_____


### No. W2015-01026-CCA-R3-CD  -  Filed August 1, 2016
_____


The defendant, Prince Dumas, entered a guilty plea to one count of a first offense for driving under the influence ("DUI"), a Class A misdemeanor.  As part of the plea, the defendant reserved a certified question of law.  The defendant asserts that police initiated a seizure without reasonable suspicion and that because all of the evidence stems from this seizure, he is entitled to have the indictment dismissed.  We conclude that the defendant's certified question, as drafted, is not dispositive of the case, and we are accordingly constrained to dismiss the appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Case Dismissed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

Claiborne Ferguson, Memphis, Tennessee (at plea and on appeal), and David Willis, Memphis, Tennessee (at hearing), for the Appellant, Prince Dumas.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Michael McCusker, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

The defendant was arrested for DUI, and he moved to suppress the evidence obtained during his encounter with law enforcement. The only evidence at the suppression hearing came from one of the police officers involved in the defendant's arrest. Officer Brian Redick testified that on October 11, 2012, at approximately 1:45 a.m., he was conducting a traffic stop when a citizen flagged him down and told him that a "suspicious vehicle" was "sitting off the side of the roadway." It took Officer Redick about three or four minutes to finish with the traffic stop, and he proceeded less than a quarter of a mile down the road, where he found the defendant's vehicle.

The defendant's vehicle was pulled off of the road into a field. The vehicle was parked approximately fifteen feet from the edge of the road. Officer Redick testified that when he saw the vehicle off to the side of the road, he activated his blue lights and ran the license plate to make sure it had not been reported stolen. Officer Redick then walked up to the vehicle. He could not see that anyone was in the vehicle at the time that he was approaching it. Once he got up to the vehicle, he saw that the defendant was in it and that the defendant was asleep. The car was running.

Officer Redick knocked on the window. The defendant either rolled down the window or opened the door. The defendant's speech was slurred, and an odor of alcohol emanated from his vehicle and from his person. At this point, Officer Redick put the defendant in handcuffs and put him into the police vehicle while he waited for a DUI officer to arrive. The defendant appeared unsteady on his feet and submitted to a breathalyzer test. At the plea hearing, the prosecutor stated that the defendant failed field sobriety tests and had a blood alcohol content of 0.151 percent according to the breathalyzer.

Officer Redick testified that he had encountered a vehicle under similar circumstances approximately twenty times, and that in fifteen of those, the driver was intoxicated, while in the others the car was stolen or the driver was merely sleeping. He acknowledged that he did not know at the time whether or not the defendant was the owner of the field in which his vehicle was parked.

The trial court denied the motion to suppress. In doing so, the trial court found that the activation of the emergency lights did not constitute a seizure. The trial court did not make a determination of exactly when the seizure occurred, but it unambiguously stated that "there was no seizure involved by turning on the blue lights." The trial court

2

offered alternative reasons for this finding. First, it found that there was no seizure because the defendant, who was asleep, was not aware that the lights were activated. As an alternative, the trial court found that the police officer had activated his lights in his community caretaking role, finding that "it's certainly reasonable for an officer to check on a car at 1:45 in the morning in a field to see if somebody is hurt" and that "it's reasonable to activate your blue lights before you leave the car." The trial court determined that even if it were to conclude that the activation of the lights constituted a seizure, there was reasonable suspicion to detain the defendant at the time the lights were activated based on the time of night, the fact that the vehicle was running, and the vehicle's location off the road.

The defendant entered a guilty plea pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(A), reserving the following certified question of law:

> Did the Court err in not granting the Defendant's Motion to Suppress based on the initial stop and seizure (i.e., turning on the blue lights) not being supported by reasonable articulable suspicion for the stop. The question is based on the *State v. Moats*, 403 S.W.3d 170 (Tenn. 2013) case law regarding the illegality of traffic stops without reasonable suspicion. This is a dispositive question because if the stop and initial seizure was invalid, all evidence of impairment and driving would be suppressed and the State would have no evidence to proceed on a prosecution of Driving Under the Influence. The conviction would be invalid.

## ANALYSIS

In the case at bar, the strict requirements of Tennessee Rule of Criminal Procedure 37(b) once again preclude the review of a certified question of law. We have noted in the past that this rule has become "the quagmire of criminal jurisprudence in Tennessee." *State v. Thompson*, 131 S.W.3d 923, 923-24 (Tenn. Crim. App. 2003). We have also described it as "a trap" which does not function as intended. *State v. Danny Harold Ogle*, No. E2000-00421-CCA-R3-CD, 2001 WL 38755, at *4 (Tenn. Crim. App. Jan. 17, 2001).

Under Tennessee Rule of Criminal Procedure 37(b), review is limited to the questions which are identified in the certified question and which were decided by the trial court. *State v. Pendergrass*, 937 S.W.2d 834, 838 (Tenn. 1996). This court cannot reach beyond the scope of the certified question which has been preserved by the parties. *State v. Day*, 263 S.W.3d 891, 900 (Tenn. 2008) ("[N]o issue beyond the scope of the

3

certified question will be considered."). Our jurisdiction to hear the certified question is "predicated upon the [statutory] provisions for reserving a certified question of law." *State v. Jon Michael Johnson*, No. M2014-01834-CCA-R3-CD, 2015 WL 6164009, at *5 (Tenn. Crim. App. Oct. 21, 2015).

Tennessee Rule of Criminal Procedure 37(b)(2)(A) requires that the certified question be dispositive of the case. A certified question is dispositive when the appellate court must either affirm the judgment or reverse the judgment and dismiss the charges. *State v. Walton*, 41 S.W.3d 75, 96 (Tenn. 2001). When the appellate court might reverse and remand, the issue is not dispositive. *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984).

Failure to properly certify a dispositive question of law results in dismissal. *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988). The reviewing court must make an independent determination regarding whether the question presented is dispositive of the case. *State v. Dailey*, 235 S.W.3d 131, 135 (Tenn. 2007). The relevant issue is whether the question is dispositive on the record presented on appeal. *Id.*

The trial court's decision regarding a motion to suppress is not dispositive when there is additional, unchallenged evidence which could be used to support the conviction. *See State v. William Jeffery Sweet*, No. E2008-00100-CCA-R3-CD, 2009 WL 2167785, at *11 (Tenn. Crim. App. July 21, 2009) (concluding that question of the admissibility of a blood alcohol test was not dispositive when witnesses were available to testify that the defendant had been drinking and was driving erratically); *State v. John Whittington*, No. W2004-02405-CCA-R3CD, 2005 WL 3059423, at *3 (Tenn. Crim. App. Nov. 10, 2005) (noting that an officer's testimony that the defendant exhibited signs of intoxication could support a conviction without the breathalyzer test, and the question of the suppression of the breathalyzer was only dispositive when the conviction was DUI per se); *State v. Jared C. Brown*, No. M2004-02101-CCA-R3-CD, 2005 WL 2139815, at *5 (Tenn. Crim. App. Aug. 30, 2005) (dismissing appeal when the defendant failed to challenge a separate warrant for a search performed at a delivery facility which yielded evidence to support the conviction); *State v. Kevin Bufford*, No. M2004-00536-CCA-R3-CD, 2005 WL 1521779, at *4 (Tenn. Crim. App. June 24, 2005) (dismissing appeal because defendant's confession made after seizure was not dispositive when there was video evidence of one crime and codefendant implicated him in all offenses); *State v. Michael Kennedy*, No. W2001-03107-CCA-R3-CD, 2003 WL 402798, at *3 (Tenn. Crim. App. Feb. 21, 2003) (holding that question of consent to search was not dispositive when the victim could also testify to defendant's possession of stolen items).

In fact, we have dismissed certified questions raising the validity of the basis for a search when the search in question was also supported by alternative bases. In *State v.*

*Thurman G. Ledford*, this court concluded that the question of whether the smell of ammonia was sufficient to support the warrant was not dispositive because the warrant in fact contained other information, including citizen complaints of visitors at all hours who generally stayed only ten minutes. No. E2002-01660-CCA-R3-CD, 2003 WL 21221280, at *1, 4 (Tenn. Crim. App. May 22, 2003) ("The strong odor of ammonia is not determinative or dispositive because the validity of the search warrant can still rest on other information supplied in the affidavit."). We note, however, that in *State v. Day*, the Tennessee Supreme Court reviewed whether there was reasonable articulable suspicion for a stop despite the fact that the trial court decided the motion to suppress on an alternative ground. In *Day*, the trial court had upheld the stop of a vehicle based on the community caretaking doctrine. *Day*, 263 S.W.3d at 899 ("[T]he trial court acknowledged that it was a close question, but ultimately concluded that 'public safety' concerns rendered the stop valid."). However, the certified question raised only the issue of whether there was reasonable suspicion to initiate a traffic stop. *Id.* The Tennessee Supreme Court noted that its "consideration of the stop under the community caretaking exception might well yield a different outcome," but ultimately only decided that there was not reasonable suspicion to initiate the stop. *Id.* at 900. The dissent in *Day* suggests that the better course would have been to dismiss the appeal as improvidently granted. *Id.* at 906 (Koch, J., dissenting in part).

The certified question here raises the issue of whether there was reasonable, articulable suspicion justifying a seizure. Although it cites to *State v. Moats*, 403 S.W.3d 170 (Tenn. 2015) *overruled by State v. Kenneth McCormick*, No. M2013-02189-SC-R11-CD, __ S.W.3d __, 2016 WL 2742841, at *7 (Tenn. May 10, 2016), the certified question does not raise the issue of whether the stop was justified under the community caretaking doctrine. Neither does the certified question ask this court to review the trial court's initial determination that turning on the emergency lights did not constitute a seizure.

A certified question may be rendered nondispositive by the failure to raise an underlying issue when the determination of that underlying issue is necessarily the basis of the disputed question. In *State v. Christopher Christie*, the defendant wished to challenge the indictment as violative of the statute of limitations based on the premise that a custodial arrest was contrary to statute and that the warrants for the arrest, which purported to toll the statute, were consequently void. No. M2006-00612-CCA-R3-CD, 2007 WL 152484, at *2 (Tenn. Crim. App. Jan. 18, 2007). This court concluded that the defendant's failure to preserve the record regarding the trial court's determination of the validity of the custodial arrest rendered the remaining arguments nondispositive, and we dismissed based on this ground and other procedural failures. *Id.* at *3. Here, likewise, the defendant questions the reasons underlying the activation of the blue lights but does not raise the basis of the denial of suppression: the finding that there was no seizure at the time the lights were activated.

5

The certified question here clearly limits the scope of our review to whether "the initial stop and seizure (i.e., turning on the blue lights)" was "supported by reasonable[,] articulable suspicion for the stop." However, the trial court's explicit finding (the correctness of which is not within the scope of review) was that there was no seizure when the blue lights were activated. We have previously recognized that not every activation of a patrol car's emergency equipment constitutes a seizure. *See State v. Robert Lee Vandergriff, Jr.*, No. E2010-02560-CCA-R3CD, 2012 WL 2445049, at *1 (Tenn. Crim. App. June 28, 2012); *State v. James Dewey Jensen, Jr.*, No. E2002-00712-CCA-R3-CD, 2002 WL 31528549, at *1 (Tenn. Crim. App. Nov. 15, 2002). Accordingly, whether there was reasonable, articulable suspicion to stop the defendant at the time that the blue lights were activated is not dispositive of this particular conviction, given the unchallenged conclusion that there was no seizure until some unspecified time after Officer Redick had approached the vehicle on foot.

We note that, although the trial court did not have the benefit of the Supreme Court's recent decision in *State v. Kenneth McCormick*, 2016 WL 2742841, the court's determination that Officer Redick was acting within his community caretaking role is consistent with our high court's most recent jurisprudence in that area. In *McCormick*, a law enforcement officer discovered the defendant's vehicle at 2:45 a.m., sitting with its headlights on, partially blocking the entry to a shopping center and partially in the roadway. *McCormick*, 2016 WL 2742841, at *1. The officer turned on his "back blue lights" and ultimately discovered the intoxicated defendant in the running vehicle. *Id.* The Court noted that it would, "for the purposes of this appeal" assume that the activation of lights was a seizure. *Id.* at *5. The Court held that a warrantless seizure is justified under the community caretaking exception when the State can show that:

> (1) the officer possessed specific and articulable facts which, viewed objectively and in the totality of the circumstances, reasonably warranted a conclusion that a community caretaking action was needed, such as the possibility of a person in need of assistance or the existence of a potential threat to public safety; and (2) the officer's behavior and the scope of the intrusion were reasonably restrained and tailored to the community caretaking need.

*Id.* at *9. While the trial court provided several alternative bases for its conclusion that the evidence should not be suppressed, these bases were not raised by the question preserved by the parties. Neither was the trial court's determination that law enforcement did not seize the defendant at the time that the blue lights were activated.

We conclude that in this case, the failure to preserve for review the trial court's determination that the activation of the blue lights did not constitute a seizure renders meaningless the actual question presented, which is whether there was reasonable, articulable suspicion to turn on the blue lights. Accordingly, the appeal is dismissed.

## CONCLUSION

Having been presented with a certified question which is not dispositive of the case before us, we are constrained to dismiss the appeal.

_____
JOHN EVERETT WILLIAMS, JUDGE